```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE        *   MDL Docket No. 2004
                                     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                     Case Nos.
LIABILITY LITIGATION             *   4:12-cv-301 (Downey)
                                     4:12-cv-303 (Cavazos)
                                 *   4:12-cv-311 (Latta)
                                     4:13-cv-011 (Hirshfield)
                                 *   4:13-cv-092 (Greenman)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Lisa Marie Downey, Dorales Cavazos, Christina Latta, Deborah Hirshfield, and Margie Greenman were implanted with ObTape and assert that they suffered injuries caused by ObTape. Each Plaintiff brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Plaintiffs brought their claims under several theories. Mentor argues that all of their claims are time-barred. For the reasons set forth below, Mentor's summary judgment motions are granted as to all of Plaintiffs' claims except Cavazos's negligence and fraudulent concealment claims. Summary judgment is

denied as to Cavazos's negligence and fraudulent concealment claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

**I.   Plaintiff Lisa Marie Downey (ECF No. 48 in 4:12-cv-301)**

Lisa Downey was diagnosed with stress urinary incontinence and referred to Dr. David Pollifrone for a sling implant surgery. Dr. Pollifrone implanted Downey with ObTape on December 8, 2003. In August 2004, Downey went to Dr. Kathryn Garner complaining of vaginal bleeding.  Dr. Garner told Downey that she thought the tape was eroding and that Downey should see Dr. Pollifrone for further treatment.  Dr. Pollifrone confirmed that Downey's ObTape had eroded.  He told Downey that he thought her bleeding was

2

caused by the erosion and that he needed to remove the eroded ObTape. Dr. Pollifrone removed the entire tape on August 25, 2004.

Downey is an Indiana resident whose ObTape-related treatment took place in Indiana. On September 26, 2012, Downey served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Downey brought claims for strict liability, negligence, and fraudulent concealment.

## II.   Plaintiff Dorales Cavazos (ECF No. 48 in 4:12-cv-303)

Dr. Joan Meaney implanted Dorales Cavazos with ObTape on July 22, 2004 to treat Cavazos's stress urinary incontinence. At some point after the implant surgery, Cavazos began experiencing sharp pain, and she became aware that a hard object was coming out of her vagina. Cavazos began carrying a glove with her so that she could push the hard object back into her vagina. When she did that, the glove would fill with pus and blood, and the "the smell was just horrible." Cavazos Dep. 59:10-17, ECF No. 48-5 in 4:12-cv-303. Cavazos testified that she believed that her implanting physician had left something inside of her. *Id.* at 127:8-9. It is not clear from the present record when Cavazos began experiencing these complications.

In October 2006, Cavazos visited Dr. Denise Woody-Gross for an annual exam. Dr. Woody-Gross told Cavazos she had "something" in her vagina but that she had "no idea" what. *Id.* at 126:7-8.

3

Dr. Woody-Gross asked Cavazos if she had "something put in." *Id.* at 127:6-7. Cavazos told Dr. Woody-Gross that she "had a mesh put in." *Id.* at 127:7. In her office notes, Dr. Woody-Gross wrote that there was a ridge palpable where the sling was, although Cavazos denies that Dr. Woody-Gross told her that the "something" was the mesh. Cavazos asked Dr. Woody-Gross to take out "whatever it [was she had] in there." *Id.* at 126:16-17. Dr. Woody-Gross replied that she did not perform surgeries, and she suggested that Cavazos see a urogynecologist. In her file, Dr. Woody-Gross noted that she suggested that Cavazos see a urogynecologist about the ridge and the sling.

   Cavazos went to see Dr. James Lovell in September 2007. He told Cavazos that her mesh had become exposed through her vagina. *Id.* at 130:7-10. According to Cavazos, Dr. Lovell "wanted to snip" the mesh. *Id.* at 61:15. Cavazos "wanted it all taken out and he . . . said he wouldn't work that way." *Id.* at 61:15-16. Cavazos thought that Dr. Lovell was rude to her because he refused to remove the entire mesh, so she sought treatment from Dr. Stephen Kraus in November 2007. Cavazos told Dr. Kraus that her mesh was coming out of her vagina. Kraus Dep. 25:17-26:9, ECF No. 48-6. Dr. Kraus noted that Cavazos told him that she had experienced erosions for more than three years. Cavazos Dep. 137:21-138:9. Dr. Kraus confirmed the erosion and told Cavazos

4

that her mesh needed to be removed. Dr. Kraus and another doctor removed Cavazos's ObTape on February 19, 2008.

Cavazos is a Texas resident whose ObTape-related treatment took place in Texas. On September 28, 2012, Cavazos served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Cavazos brought claims for strict liability, negligence, and fraudulent concealment.

**III. Plaintiff Christina Latta (ECF No. 50 in 4:12-cv-311)**

Christina Latta visited Dr. Gill Anderson for treatment of stress urinary incontinence, and Dr. Anderson recommended an ObTape implant procedure. Dr. Anderson implanted Latta with ObTape on March 25, 2004. In July 2004, Latta went back to see Dr. Anderson, complaining of malodorous vaginal discharge. Dr. Anderson told Latta that a portion of her ObTape had eroded through her vaginal wall and that he needed to cut out a piece of it. Dr. Anderson performed the revision surgery on July 15, 2004. Between October 2004 and September 2005, Dr. Anderson performed three other revision surgeries. Latta believed that her body was rejecting the ObTape.

Latta is a Washington resident whose ObTape-related treatment took place in Washington. On October 2, 2012, Latta served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Latta brought claims for strict liability, negligence, and fraudulent concealment.

**IV.  Plaintiff Deborah Hirshfield (ECF No. 50 in 4:13-cv-11)**

Deborah Hirshfield saw Dr. Natalie Sohn for treatment of stress urinary incontinence. On July 1, 2004, Dr. Sohn implanted Hirshfield with ObTape. In December 2005, Hirshfield developed discharge, abdominal pain, and several other symptoms. She went to Dr. Sohn for treatment of these symptoms. Dr. Sohn told Hirshfield that her ObTape had eroded, was infected, and needed to be removed. Hirshfield understood that Dr. Sohn planned to remove the ObTape to resolve her symptoms.

Dr. Sohn performed a partial removal procedure on January 5, 2006. Hirshfield continued to experience discharge and began experiencing leg pain, so she returned to Dr. Sohn in February 2006. Dr. Sohn removed the rest of Hirshfield's ObTape. Most of Hirshfield's symptoms, including the leg pain, were resolved after the second excision procedure.

Hirshfield is a Florida resident whose ObTape-related treatment took place in Florida. On December 12, 2012, Hirshfield served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota. Hirshfield brought claims for strict liability, negligence, and fraudulent concealment.

**V.  Plaintiff Margie Greenman (ECF No. 41 in 4:13-cv-92)**

In 2003, Margie Greenman visited Dr. Jonathan Vukovich for treatment of a renal cyst. Dr. Vukovich diagnosed Greenman with

6

stress urinary incontinence.  Dr. Vukovich began treating Greenman's incontinence with medication, but he later recommended that Greenman undergo a sling implant.  Dr. Vukovich implanted Greenman with ObTape on January 21, 2004.

Greenman began experiencing bleeding in November 2004.  During her annual physical, Greenman's nurse practitioner identified a "puncture" and told Greenman to go back to Dr. Vukovich and "tell him to pay special attention to the area at 3 o'clock."  Greenman Dep. 101:16-102:16, ECF No. 41-5.  Greenman visited Dr. Vukovich on November 18, 2004.  He diagnosed Greenman with a vaginal erosion and told her that he needed to excise the exposed portion of ObTape.  Dr. Vukovich performed an excision procedure on December 2, 2004.  Many of Grenman's symptoms resolved after that procedure.  Greenman returned to Dr. Vukovich in August 2005 because she was experiencing spotting and was concerned that she had another erosion.  Dr. Vukovich did not find an erosion, and Greenman's spotting symptoms stopped by December 2005.  Greenman did have a second erosion in 2010, and Dr. Vukovich performed another revision surgery.

Greenman is a Florida resident whose ObTape-related treatment took place in Alabama.  On April 1, 2013, Greenman served Mentor with a copy of her Complaint captioned in Hennepin County District Court of the State of Minnesota.  Greenman brought claims for strict liability, negligence, breach of express warranty, breach

7

of implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation. Greenman does not contest Mentor's summary judgment motion on her warranty claims, and summary judgment is therefore granted as to those claims.

## DISCUSSION

Each Plaintiff filed her action in Minnesota state court, and Mentor removed each Plaintiff's action to the United States District Court for the District of Minnesota. The cases were later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Plaintiffs' claims. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2013 WL 286276, at *7 (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

**I.  Strict Liability and Negligence Claims**

Mentor contends that Plaintiffs' strict liability and negligence claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). The statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05 subd. 1(5) (establishing six-year

8

limitation period for personal injury claims not arising in contract or strict liability).

Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law). "A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause." *Id.* For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Id.* at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, each Plaintiff contends that she did not learn of a connection between ObTape and her injuries until 2009 or later –

9

either based on a television commercial regarding mesh complications or a consultation with a doctor. But each Plaintiff knew that she suffered some injuries caused by ObTape well before then.

Lisa Marie Downey. In August 2004, Downey went to her doctor because she was experiencing vaginal bleeding. The doctor found an erosion of the ObTape and told Downey that her bleeding was likely caused by the erosion. He also told Downey that he needed to remove the eroded ObTape, and he did so on August 25, 2004. Therefore, Downey knew by August 2004 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than eight years later, in September 2012.

Dorales Cavazos. After her ObTape implant, Cavazos began experiencing sharp pain, and she became aware that a hard object was coming out of her vagina. It is not clear from the present record when Cavazos began experiencing these symptoms. Mentor argues that Cavazos became aware in 2004 that she had suffered an erosion because she told Dr. Kraus in 2007 that she had experienced erosions for more than three years. But Mentor did not point the Court to any evidence that Cavazos knew she had suffered an erosion in 2004 (or that she had actually suffered an erosion in 2004). Rather, the evidence Mentor pointed to establishes that Cavazos knew by the time she saw Dr. Kraus in

2007—after seeking treatment from two other doctors—that she had suffered an erosion.

Mentor also did not point to any evidence that Cavazos knew the hard object she felt in her vagina was ObTape until at least October 5, 2006, when Dr. Woody-Gross told Cavazos she needed to see a urogynecologist about the palpable ridge in the area of her sling.[1]  Mentor argues, however, that Cavazos should have known of a connection between ObTape and her injuries before October 2006 because a reasonable person in her situation would have investigated her symptoms by visiting a doctor.  But it is not clear from the present record when Cavazos began experiencing these symptoms or how soon she was able to see a doctor after she started having them.  Thus, based on the present record, there is a genuine fact dispute as to when Cavazos's claims accrued, and a reasonable factfinder could conclude that her claims did not accrue until October 5, 2006.  Cavazos filed her action within six years of that date, so her negligence claim is timely.  But she did not file her action within four years of that date or within four years of September 2007, when she asked Dr. Lovell to remove her entire ObTape.

---

[1] Cavazos denies making a connection between ObTape and her injuries as a result of her consultation with Dr. Woody-Gross.  Although Cavazos denies that Dr. Woody-Gross told her that the hard object in her vagina was ObTape, Dr. Woody-Gross did conclude that there was an issue with the ObTape and presumably would have shared this conclusion with Cavazos had she asked.

Christina Latta. In July 2004, Latta went to her doctor complaining of malodorous vaginal discharge. Latta's doctor told her that a portion of her ObTape had eroded through her vaginal wall and that he needed to cut out a piece of it. He did so in July 2004. At the time, Latta believed that her body was rejecting the ObTape. Therefore, Latta knew in July 2004 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than eight years later, in October 2012.

Deborah Hirshfield. In December 2005, Hirshfield went to her doctor for treatment of discharge, abdominal pain, and several other symptoms. The doctor told Hirshfield that her ObTape had eroded, was infected, and needed to be removed. The first excision procedure did not resolve all of Hirshfield's symptoms, so Hirshfield had a second excision procedure in February 2006. After that procedure, most of Hirshfield's symptoms were resolved. Therefore, Hirshfield knew by February 2006 that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than six years later, in December 2012.

Margie Greenman. Greenman began experiencing bleeding in November 2004, and her nurse practitioner found a puncture in Greenman's vaginal wall. Greenman's doctor diagnosed her with a vaginal erosion and told her that he needed to excise the exposed

12

portion of ObTape.  After the excision surgery, many of Greenman's symptoms resolved.  Therefore, Greenman knew by November 2004 that there was a likely connection between ObTape and some of her injuries.  She did not file her complaint until more than eight years later, in April 2013.

In summary, with the exception of Cavazos, each Plaintiff connected at least some of her injuries to ObTape more than six years before she filed suit.  Accordingly, their strict liability and negligence claims are time-barred under Minnesota law.  And Cavazos connected her injuries to ObTape more than four years before she filed suit, so her strict liability claims are time-barred.

Plaintiffs contend that it is not enough that they made a connection between ObTape and some of their injuries.  Rather, they appear to argue that they must have been on notice that a *defect* in ObTape caused their injuries.  Plaintiffs did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a product *defect*.  Rather, the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product.  *Klempka*, 963 F.2d at 170.

Plaintiffs nonetheless contend that two Eighth Circuit cases and one Minnesota District Court case support denial of summary

13

judgment on their negligence and strict liability claims. The Court disagrees. First, they point to *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), where the plaintiffs alleged that they suffered lung damage due to their exposure to a toxic chemical at their workplace. But there, unlike here, the plaintiffs' doctors initially told the plaintiffs that there was no correlation between their symptoms and the chemical. *Id.* at 399. The Eighth Circuit thus concluded that the plaintiffs' claims did not accrue until the cause of the plaintiffs' injuries was rationally identified. Second, Plaintiffs point to *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004). In *Tuttle*, the district court found that the decedent's smokeless tobacco product liability action accrued when the decedent discovered a lump in his cheek. The Eighth Circuit reversed because the decedent's doctor initially told the decedent that the lump was caused by an oral infection and was treatable with antibiotics—not that it was oral cancer caused by the tobacco. *Id.* at 922. Third, Plaintiffs point to *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013). In *Huggins*, the plaintiff asserted that the defendant's pain pump caused a condition that resulted in degeneration of his cartilage. The plaintiff's doctor discovered the loss of cartilage in 2002, but he did not connect the condition to the pain pump or tell the plaintiff that there was such a connection. The district court noted that the "first

14

article recognizing a potential causal link between pain pumps" and the plaintiff's condition was not published until 2007. *Id.*

*Hildebrandt, Tuttle,* and *Huggins* are all distinguishable from Plaintiffs' cases. In *Hildebrandt, Tuttle,* and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else, and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury. In contrast, here, each Plaintiff suffered injuries that were connected to an erosion or infection of the ObTape, and each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure, if not before.

Plaintiffs argue that even if Minnesota's discovery rule does not save their strict liability and negligence claims, fraudulent concealment should toll the statute of limitations. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988); *accord Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). "The party claiming fraudulent concealment has the burden of showing that the concealment could

15

not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, each Plaintiff knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time of her excision procedure, if not before. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Plaintiffs pointed to no evidence that they took any action to investigate their potential claims even though they knew (or had enough information to know) there was a connection between their injuries and the ObTape. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations.

Downey, Latta, Hirshfield, and Greenman did not file their complaints within six years after their claims accrued. Their strict liability and negligence claims (including their negligent misrepresentation claims) are therefore time-barred. Cavazos filed her complaint within six years after her claims accrued, so her negligence claim is not time-barred. But Cavazos did not file her complaint within four years after her claims accrued, so her strict liability claim is time-barred.

16

## II. Fraud and Intentional Misrepresentation Claims

Mentor also seeks summary judgment on Plaintiffs' fraud, fraudulent concealment, and intentional misrepresentation claims. The statute of limitations for fraud claims is six years. Minn. Stat. § 541.05 subd. 1(6). A fraud cause of action "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." *Id.* But "the facts constituting fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered." *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 674 (D. Minn. 1993) (quoting *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962)). "The failure to actually discover the fraud does not toll the statute of limitations if it is inconsistent with reasonable diligence." *Id.; accord Blegen v. Monarch Life Ins. Co.*, 365 N.W.2d 356, 357-58 (Minn. Ct. App. 1985). Plaintiffs "carry the burden of proving that they did not discover the facts constituting fraud within six years before commencement of the action." *Veldhuizen*, 839 F. Supp. 674. "They must also show that they could not have discovered the fraud through the exercise of reasonable diligence." *Id.*

As discussed above, Cavazos filed her complaint within six years after learning of a connection between ObTape and her injuries, so her fraudulent concealment claim is not time-barred. But Downey, Latta, Hirshfield, and Greenman did not file their

17

complaints within six years after learning of a connection between ObTape and their injuries.  They knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of their injuries by the time of their excision procedures, if not before.  A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem.  But Plaintiffs pointed to no evidence that they exercised reasonable diligence to investigate their potential claims even though they knew (or had enough information to know) there was a connection between their injuries and the ObTape.  They also did not point to evidence that they could not have discovered enough facts to support their fraud and intentional misrepresentation claims had they started investigating the connection they made (or had enough information to make) between ObTape and their injuries within a reasonable time after they discovered the connection.  For these reasons, the Court finds that the fraud and intentional misrepresentation claims of Downey, Latta, Hirshfield, and Greenman are time-barred.

## CONCLUSION

For the reasons set forth above, Mentor's summary judgment motions are granted as to Downey (ECF No. 48 in 4:12-cv-301),

Latta (ECF No. 50 in 4:12-cv-311), Hirshfield (ECF No. 50 in 4:13-cv-11), and Greenman (ECF No. 41 in 4:13-cv-92).

Summary judgment is also granted as to Cavazos's strict liability claims (ECF No. 48 in 4:12-cv-303) but denied as to her negligence and fraudulent concealment claims. **Within seven days of the date of this Order, the parties shall notify the Court whether they agree to a *Lexecon* waiver for Cavazos's action.**

IT IS SO ORDERED, this 2nd day of March, 2016.

                                            s/Clay D. Land
                                            CLAY D. LAND
                                            CHIEF U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA